# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JAMIE S. et. al.,

        Plaintiffs,

        v.                         Case No. 01-C-928

MILWAUKEE BOARD OF SCHOOL DIRECTORS, et. al.,

        Defendants.

## ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR INTERIM ATTORNEYS' FEES

Currently pending before the court is the plaintiffs' motion for interim attorneys' fees. (Docket No. 392.) The defendants have filed a joint response. (Docket No. 400.) The plaintiffs' have replied, (Docket No. 408), and after obtaining permission of the court, (see Docket No. 416), the defendants filed a joint sur-reply, (Docket No. 418).

While this motion was pending, the plaintiffs entered into a class settlement agreement with the Department of Public Instruction ("DPI") defendants, (Docket No. 431), which was subsequently approved by the court, (Docket No. 509), after a final fairness hearing, (Docket No. 510). DPI agreed to pay $475,000.00 in attorneys' fees and costs to the plaintiffs as a part of this class settlement agreement and was subsequently dismissed from this case. (Docket No. 431-2 at 18.) Therefore, the present dispute over attorneys' fees now involves only the Milwaukee Public Schools ("MPS") defendants.

**PREVAILING PARTY**

The Individuals with Disabilities Education Act ("IDEA") permits a prevailing party to recover reasonable attorneys' fees. Specifically, 20 U.S.C. § 1415(i)(3)(B) states:

> In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs—
> (I) to a prevailing party who is the parent of a child with a disability.

MPS objects to the plaintiffs' request for interim attorneys' fees on the basis that the plaintiffs are not yet a prevailing party.

So far, this case has proceeded through two phases of court trial; a final remedies phase is scheduled to begin November 3, 2008. In a decision and order following the second phase of the court trial dated September 11, 2007, the court determined that the defendants systemically violated the IDEA. (Docket No. 389.) Nonetheless, MPS argues that since the plaintiffs have not obtained an enforceable legal judgment against the defendant and there has been no judicially sanctioned change in the legal relationship between the parties, the plaintiffs are not a prevailing party. (Docket No. 404 at 14-15.)

With respect to a request for interim attorneys' fees, the Seventh Circuit held that "once a plaintiff obtains substantive relief that is not defeasible by further proceedings, he can seek interim fees and the district court has the power to award them." Dupuy v. Samuels, 423 F.3d 714, 719 (7th Cir. 2005) (quoting Richardson v. Penfold, 900 F.2d 116, 119 (7th Cir. 1990)).

The only matter left to be decided in this case is the remedy; the question of liability was determined by the court in its September 11, 2007 Decision and Order. The plaintiffs have prevailed. There is nothing that could be reasonably expected to occur in Phase III that would remove such status from the plaintiffs. Even if the court completely rejected the plaintiffs' requests for relief, the plaintiffs would nonetheless be the prevailing party, having prevailed in the crucial

question of liability. Thus, the court finds that an award of interim attorneys' fees is appropriate in this case.

**ATTORNEYS' FEES**

Turning to the content of the plaintiffs' claim for interim attorneys' fees, MPS objects to certain fees requested, such as fees related to unsuccessful efforts to certify the class, unsuccessful mediation, media contacts, attendance at IEP meetings, experts, and travel. Further, MPS argues that the fees claimed are vague. (Docket No. 404 at 5.)

The plaintiffs seek $1,200,891.32 in attorneys' fees and $119,007.57 in costs incurred through the end of September 2007. (Docket No. 392 at 3.) In support of this claim, the plaintiffs submitted a 104-page exhibit detailing the costs and fees incurred. (Docket No. 393-2.) This document sets forth roughly 7,400 hours of work on this case covering more than six years. The hours include the time of four attorneys (totaling almost 3,700 hours of attorney time), five paralegals (totaling roughly 2,600 hours of paralegal time), and seven law clerks (totaling roughly 1,200 hours of law clerk time).

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

Beginning with the question of a reasonable hourly rate, attorneys Jeffrey Spitzer-Resnick and Monica Murphy each request compensation at an hourly rate of $265.00. Patrick Berigan seeks compensation at an hourly rate of $250.00, and Michael Bachhuber seeks compensation at $215.00 per hour. For paralegal time, plaintiffs seek compensation at the rate of $80.00 per hour and for law clerks at the rate of $40.00 per hour. MPS objects to these hourly rates on the basis that the

3

plaintiffs have failed to present adequate evidence to support the conclusion that they are reasonable.

In determining whether an hourly rate is reasonable, a court should evaluate what is a prevailing market rate in the relevant community for an attorney of comparable experience, skill, and reputation. Blum v. Stenson, 465 U.S. 886, 895-96 n.11 (1984). "[T]he burden is on the fee applicant to produce satisfactory evidence -- in addition to the attorney's own affidavits -- that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Id. at 896 n.11.

In support of the fees requested is attorney Spitzer-Resnick's affidavit in which he outlines the experience of the attorneys and support staff at Disability Rights Wisconsin ("DRW") for whom he seeks compensation as follows:

> I [Attorney Spitzer-Resnick] have been a practicing attorney for 22 years. I have litigated complex cases in both state and federal court both at the trial and appellate levels. I have been an attorney at DRW for over 12 years, during which time I have become an expert in special education matters.
>
> Attorney Monica Murphy has been a practicing attorney for 21 years. She has litigated complex cases in both state and federal court both at the trial and appellate levels. She has been an attorney at DRW for over 13 years, during which time she has become an expert in special education matters.
>
> Attorney Patrick Berigan was employed at DRW from November, 2000-August, 2006, as a Supervising Attorney. At the time he left DRW, he had over 22 years of experience practicing as an attorney.
>
> Attorney Mike Bachhuber was employed at DRW from June, 1997-November, 2003. At the time he left DRW, he had over 18 years of experience practicing as an attorney, including litigating complex class action and special education matters.
>
> Paralegal Terri Fuller was employed at DRW from September, 1995-August, 2007. At the time she left DRW, she had over 16 years of paralegal equivalent experience. She had significant expertise in special education matters.
>
> Paralegal Cathy Steffke has been employed at DRW since February, 2004. To date, she has nearly 23 years of paralegal equivalent experience. She has significant expertise in special education matters.

> Paralegal Jo Cauley has been employed at DRW since January, 2000. To date, she has over 12 years of paralegal equivalent experience. She has significant expertise in special education matters.
>
> Paralegal Susan Tess has been employed at DRW since November 1986. Her 21 years of paralegal experience at DRW has given her significant disability law experience.
>
> Paralegal Catherine Krieps was employed at DRW from June, 2000-December, 2002. During this period, she gained significant special education experience.
>
> Law Clerks Melanie Cairns, Vanessa Carroll, Jonathan Kinkel, Kathryn Peacock, Erin Parks and Demian Casey were all law students while working at DRW on this case.
>
> Law Clerk Krystal Thomas was trained by DRW legal professionals to investigate and conduct research in this case.

(Docket No. 393-1 at ¶¶4a-k.)

The other evidence provided by the plaintiffs in support of the proposed hourly rate is the affidavit of Lynn Novotnak. (Docket No. 394.) Attorney Novotnak, a shareholder at the law firm of Hawks, Quindel, Ehlke & Perry, SC in Milwaukee, has been a practicing attorney for 26 years and has spent the last 15 years focusing upon "representing plaintiffs in a variety of civil rights matters, including cases involving state and federal special education law, the Americans with Disabilities Act, and Sec. 504 of the Rehabilitation Act." (Docket No. 394 at 1.) Depending upon the nature and complexity of the case, she charges clients $200.00 per hour in special education cases and the firm charges $50.00 per hour for paralegal work. (Docket No. 394 at 1.) Attorney Novotnak also avers that the rates charged requested by the plaintiffs are reasonable. (Docket No. 394 at 2.)

MPS argues that the affidavit of plaintiffs' counsel is insufficient to support the requested fees and that the only competent evidence provided by the plaintiffs establishes that the prevailing market rate in the Milwaukee area is no more than $200 per hour for attorney time and $50 per hour for paralegal time. (Docket No. 404 at 31.)

The court disagrees with MPS in part regarding the reasonableness of the hourly rates for plaintiff's attorneys. Even though attorney Novotnak is very experienced and bills at a lower rate than plaintiffs' counsel, the present class action has been exceptionally complex and has required an extra degree of expertise and skill in its prosecution. As such, the court finds that the hourly rates charged by plaintiffs' lead counsel, attorneys Spitzer-Resnick and Murphy, are reasonable.

As for attorneys Patrick Berigan and Michael Bachhuber, based upon their experience in relation to attorneys Spitzer-Resnick and Murphy, and in view of attorney Novotnak's rate, the court finds that a rate of $200.00 per hour is reasonable.

On the other hand, turning to the requested hourly rate for paralegals, the court finds that the plaintiffs have failed to demonstrate that $80.00 per hour is a reasonable prevailing market rate. Rather, the court finds that the $50.00 per hour rate set forth in the affidavit of attorney Novotnak is an appropriate prevailing market rate.

Finally, there is the question of a reasonable hourly rate for law clerks. It is unclear if these law clerks were paid or volunteers. In any event, in light of the fact that DRW acknowledges that the value of the work of temporary law clerks, the majority of whom were law students, is half that of an experienced paralegal, the court finds a rate of $25.00 per hour is appropriate for these law clerks.

Having determined reasonable hourly rates, the second step in the formula is a determination of a reasonable number of hours expended by the plaintiffs in this litigation. MPS argues that the court should substantially reduce the hours claimed by the plaintiffs because the plaintiffs are seeking compensation for matters on which they did not prevail. For example, there were several unsuccessful efforts to certify the class; many time entries are vague and thus do not permit the court to determine whether the time claimed was reasonably expended; and the plaintiffs seek

compensation for non-compensable activities such as attending IEP meetings, contacts with the media, or attending unsuccessful mediation.

The court agrees with the defendants that some reduction of the total hours claimed is warranted. A line-by-line analysis of the more than 100 pages of billing records submitted in this case is impractical and not required. <u>Harper v. City of Chicago Heights</u>, 223 F.3d 593, 605 (7th Cir. 2000). Rather, a reviewing court may, if appropriate, strike the unacceptable entry or reduce the requested hours by a reasonable percentage. <u>Id.</u> "Whichever option the district court chooses, it is required to 'provide a concise but clear explanation of its reasons for the fee award' that is sufficient to permit appellate review." <u>Id.</u> (quoting <u>Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.</u>, 776 F.2d 646, 658 (7th Cir. 1985) (in turn quoting <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983))).

MPS argues that the plaintiffs are inappropriately seeking compensation for 291.55 hours spent at IEP meetings. (<u>See</u> Docket No. 405-2.) 20 U.S.C. § 1415(i)(3)(D)(ii) prohibits the award for attorneys fees relating to any IEP meeting "unless such meeting is convened as a result of an administrative proceeding or judicial action." The plaintiffs respond to MPS' objection by stating simply, "It goes without saying that every IEP meeting which was included in the plaintiffs' submission was an IEP meeting which was convened as a result of this litigation." (Docket No. 48 at 14.)

The court is not persuaded by the plaintiffs' perfunctory explanation. This court declines to accept a conclusory statement that every IEP meeting convened during the pendency of this litigation was as a result of judicial action. While the court recognizes that both defendants took certain remedial action during the pendency of this litigation, none of it was in response to any court order. Therefore, simply because a particular IEP was convened during the pendency of this litigation does not support the conclusion that it was as a result of this action. Accordingly, the court finds that the plaintiffs have failed in their burden to demonstrate that the IEP meetings for which

7

they seek compensable time were convened as a result of judicial action. Since the plaintiffs do not challenge MPS' allocation of the time it alleges was improperly charged for IEP meetings, the court shall accept the figures set forth in MPS' Exhibit F, (Docket No. 405-2.) Therefore, the court shall subtract the following hours: Attorney Murphy – 87.10 hours; Attorney Bachhuber – 66.00 hours; Attorney Berigan – 33.45 hours; paralegal Fuller – 52.50 hours; and paralegal Steffke – 52.50 hours.

As for the plaintiffs' request for compensation for time spent in contact with the media, courts have differed on whether or not such time is compensable. See Roger Whitmore's Auto. Servs., Inc. v. Lake County, 2004 U.S. Dist. LEXIS 21626, 27-29 (N.D. Ill. 2004) (citing cases); see also Mercier v. City of La Crosse, 2004 U.S. Dist. LEXIS 11106, 3-5 (W.D. Wis. 2004). The court finds that under certain circumstances, media contacts may be compensable time, provided that the time spent was "reasonably expended on the litigation." Hensley, 461 U.S. at 433. For example, in a complex class action case such as this, a certain amount of media contact may be a reasonably expected responsibility of class counsel as a means to ensure that the class members are notified of the pendency of this action and their respective rights.

However, plaintiffs' counsel do not allege that this was the reason for the media contacts. Rather, in support of their request for fees related to media contacts, the plaintiffs state:

> The instant case that is being litigated by plaintiffs against governmental entities which are clearly subject to the influence of the democratic process, which is, in turn, subject to influence by the media. Indeed, DRW's media contacts have been consistent with this court's efforts to try to encourage the parties to resolve this matter through settlement.

(Docket No. 408 at 14.)

Settlement is to be encouraged, and this court has been a proponent of such a resolution. Nevertheless, the court finds that a party's attempts to use the media in an effort to create external pressure upon the opposing parties is not time for which compensation should be awarded from

such parties. When cases such as this are of public importance, the court certainly hopes that the media would fully inform the public. But if one party attempts to use the media as a means to manipulate public opinion against an opponent, in an effort to either engender settlement or further its own aims, this is not an expenditure of time this court believes is reasonably necessary to the litigation. Therefore, such time is not compensable. The plaintiffs do not challenge MPS' calculation of hours spent on non-compensable media work and therefore the court shall deduct 5.10 hours from the hours of attorney Spitzer-Resnick, (Docket Nos. 400-6, 400-10), and 5.60 hours from the hours of attorney Monica Murphy, (Docket No. 400-10).

MPS also submits that time spent during unsuccessful mediation sessions should be compensated. The court disagrees. As stated above, settlement should be encouraged. However, not every attempt to resolve the case by the parties may be successful, but they should not be dissuaded from making the effort. The court finds that mediation effort, even if unsuccessful, is time reasonably expended on the litigation. An unsuccessful mediation if pursued in good faith is not time wasted, and therefore the court rejects MPS' position that this time should not be compensated.

Next, MPS contends that the plaintiffs should not be compensated for time related to the plaintiffs' unsuccessful effort to have this court reconsider its class determination and for time spent on an appeal of the court's class certification. In response, the plaintiffs acknowledge they are not entitled to be compensated for this time and withdraw their claims for these fees and costs.

MPS alleges that this time amounts to 82.00 hours, (Docket No. 405-3), and again the plaintiffs do not challenge MPS' accounting. A review of the affidavit exhibit cited by MPS in support of this claim indicates that attorney Spitzer-Resnick spent 32.00 hours, attorney Bachhuber spent 2.5 hours and law clerk Peacock spend 47.5 hours for a total of 82.00 hours, (Docket No. 405-3.) Therefore, the court shall reduce these hours from those claimed by the plaintiffs.

9

MPS raises numerous other specific objections to the fees claimed, most significantly arguing that the hours expended before November 13, 2003, the date the court finally certified the class, should be excluded because they were expended in an unsuccessful effort to certify a far broader class than the one the court eventually certified. (Docket No. 19-20.) The plaintiffs respond that this time should be fully compensable because, although they had to try numerous times before they finally obtained class certification, this effort was nonetheless necessary to their eventual success. (Docket No. 408 at 5-11.) MPS also seeks reductions for time spent related to the plaintiffs' efforts to obtain documents prepared by the Department of Justice relating to the subject matter of this action.

The court finds some reduction of time is appropriate in light of the plaintiffs' failure to obtain as broad a class certification as they had originally desired. In other words, certain amounts of time devoted to plaintiffs' numerous unsuccessful efforts of class certification are not compensable, but this adjustment should be considered in the final step of the lodestar analysis, i.e. an adjustment based upon the degree of success obtained.

"The Supreme Court has said that 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" Linda T. v. Rice Lake Area Sch. Dist., 417 F.3d 704, 708 (7th Cir. 2005) (quoting Hensley, 461 U.S. at 436). If a plaintiff fails to prevail on claims that are distinguishable from those that he prevailed upon, the fee award should be appropriately reduced. Hensley, 461 U.S. at 440.

In the present case, as a result of several rulings, the court narrowed the scope of the class substantially from that sought by plaintiffs. Undoubtedly, many of the hours the plaintiffs spent in these early stages of the case involved issues on which the plaintiffs did not prevail. Although the plaintiffs attempt to argue that all of this time was nonetheless related to the prevailing claims, the court rejects this contention. The class eventually certified, and thus the scope of this case is

10

substantially narrower than that which the plaintiffs initially sought. Much time and effort was expended by plaintiffs' counsel in an attempt to initially persuade this court to adopt plaintiffs' position on the class, and then to seek a reconsideration. It is simply illogical to conclude that all time relating to matters beyond the eventual scope of this litigation was reasonably related to this litigation. Additionally, the plaintiffs were not fully successful on other issues such as their efforts related to the Department of Justice.

However, once the class was certified by the court, the plaintiffs were largely successful. A comparison of the unsuccessful portions of the case with the portions on which the plaintiffs prevailed indicates that the former constitutes a small percentage. Transposing that small percent to the hours expended, the court finds that a minimal reduction of 5% is appropriate.

Finally, MPS argues that the court should reduce the fees claimed by 40% because the entries on the billing statements are vague and do not permit the court to analyze whether the stated activity was reasonably expended in furtherance of the present litigation. The plaintiffs' attorneys respond that their billing records have been accepted by other courts without any reduction for vagueness. (Docket No. 408 at 14-15.)

In this court's opinion, the billing records submitted are filled with vague entries, which makes it impossible to evaluate whether the hours were reasonably related to the plaintiffs' success. For example, the billing records repeatedly provide only terse explanations of the work performed, such as "Email to . . .," Telephone Conversation with . . .," or "Meeting with . . . ." For certain persons, particularly the law clerks, the time records are even more vague, often times providing only a single word such as "Research" or "Drafting" to describe the work performed. However, the court acknowledges that the total hours alleged are not, on their face, unreasonable. This is an exceptionally complex and time consuming case and the court would expect thousands of hours to

be expended. But even acknowledging this, the court is not able to look past the vague billing entries.

Having already concluded that the plaintiffs have included numerous non-compensable activities on the their billing statements, the court finds it likely that buried within these vague entries is time that was not reasonably related to the plaintiffs' success in this case. However, neither the court nor MPS is able to neatly discern which entries are not compensable, in light of the fact that the entries are so vague. Therefore, the court finds it appropriate to make a reduction for this vagueness. But, similar to the unsuccessful/successful comparative analysis, the court concludes that any vagueness reduction should also be minimal. See J. v. Board of Educ., 98 F. Supp. 2d 226, 243 (D. Conn. 2000). Therefore, the court concludes that an additional 5% reduction is appropriate.

For the reasons set forth above, it is the conclusion of this court that the total interim attorneys' fees through September 30, 2007 appropriate in this case is $934.123.96. See Appendix. After subtracting from this figure the $475,000.00 that DPI has agreed to pay as part of its settlement with the plaintiffs, MPS' obligation is $459,123.96.

**COSTS**

The plaintiffs seek $119,007.57 in costs pursuant to 28 U.S.C. § 1920. (Docket No. 392.) This District's Local Rules are explicit that costs are not recoverable until after the entry of judgment. Civil L.R. 54.1. The Rule further explains that the party seeking to recover costs must serve on the adverse party and serve with the Clerk of Court the party's bill of costs. Judgment has not yet been entered and the plaintiffs have not complied with this procedure.

In light of this District's Local Rule requiring judgment be entered before the award of taxable costs, the court finds that an award of costs, unlike an award for attorneys' fees, is premature at this point. Therefore, the plaintiffs' request for costs shall be denied without prejudice.

**IT IS THEREFORE ORDERED** that the plaintiffs' motion for interim attorneys' fees, (Docket No. 392), is **granted as modified**. The MPS defendants shall pay to the plaintiffs' attorneys, Disability Rights Wisconsin, the amount of **$459,123.96**. The plaintiffs' motion for interim costs is **denied without prejudice**.

**IT IS FURTHER ORDERED** that defendants' motion for leave to file excess pages, (Docket No. 399), is **granted**.

Dated at Milwaukee, Wisconsin this 15th day of August 2008.

s/AARON E. GOODSTEIN<br>
U.S. Magistrate Judge

**APPENDIX** | | | | **REDUCTIONS** | | | | |

| Person | Rate claimed | Rate approved | Hours claimed | IEP | Media | Appeal | Adjusted Hours | Adjusted fees |
|---|---|---|---|---|---|---|---|---|
| Jeffrey Spitzer-Resnick | $ 265.00 | $ 265.00 | 1,351.14 | | 5.1 | 32 | 1,314.04 | $ 348,220.60 |
| Monica Murphy | $ 265.00 | $ 265.00 | 1,817.67 | 87.1 | 5.6 | | 1,724.97 | $ 457,117.05 |
| Patrick Berigan | $ 250.00 | $ 200.00 | 64.3 | 33.5 | | | 30.85 | $ 6,170.00 |
| Mike Bachhuber | $ 215.00 | $ 200.00 | 426.57 | 66 | | 2.5 | 358.07 | $ 71,614.00 |
| Terri Fuller | $ 80.00 | $ 50.00 | 1,367.90 | 52.5 | | | 1,315.40 | $ 65,770.00 |
| Cathy Steffke | $ 80.00 | $ 50.00 | 753.6 | 52.5 | | | 701.10 | $ 35,055.00 |
| Jo Cauley | $ 80.00 | $ 50.00 | 12.5 | | | | 12.50 | $ 625.00 |
| Susan Tess | $ 80.00 | $ 50.00 | 8.5 | | | | 8.50 | $ 425.00 |
| Catherine Krieps | $ 80.00 | $ 50.00 | 417.25 | | | | 417.25 | $ 20,862.50 |
| Melanie Cairns | $ 40.00 | $ 25.00 | 215 | | | | 215.00 | $ 5,375.00 |
| Vanessa Carroll | $ 40.00 | $ 25.00 | 173.5 | | | | 173.50 | $ 4,337.50 |
| Jonathan Kinkel | $ 40.00 | $ 25.00 | 118.5 | | | | 118.50 | $ 2,962.50 |
| Kathryn Peacock | $ 40.00 | $ 25.00 | 317.25 | | | 47.5 | 269.75 | $ 6,743.75 |
| Erin Parks | $ 40.00 | $ 25.00 | 98 | | | | 98.00 | $ 2,450.00 |
| Demian Casey | $ 40.00 | $ 25.00 | 133 | | | | 133.00 | $ 3,325.00 |
| Krystal Thomas | $ 40.00 | $ 25.00 | 159.5 | | | | 159.50 | $ 3,987.50 |

| | |
|---|---|
| SUBTOTAL | $ 1,035,040.40 |
| Reduction for limited success (5%) | $ 51,752.02 |
| Reduction for vagueness (5%) | $ 49,164.42 |
| TOTAL ATTORNEYS' FEES | $ 934,123.96 |
| DPI's agreed payment amount | $ 475,000.00 |
| Attorneys' fees owed by MPS to DRW | **$ 459,123.96** |