UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

_____

JAMIE S., et al.,

           Plaintiffs,

           v.                                         Case No.: 01-C-0928

MILWAUKEE BOARD OF SCHOOL DIRECTORS, et al.,

           Defendants.

_____

**PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANTS' MOTION TO RECONSIDER THE ORDER GRANTING AN EXTENSION OF TIME FOR PLAINTIFFS TO FILE A CROSS APPEAL**

_____

**INTRODUCTION**

On August 26, 2009, pursuant to Fed. Rule App. P. 4(a)(5), plaintiffs moved the court for an extension of time to file a cross-appeal of this court's order granting class certification, dated November 14, 2003. Dkt. 195. On August 27, 2009, the court granted plaintiffs' motion. Dkt. 649.

On August 28, 2009, MPS filed a Motion for Reconsideration of the court's order granting plaintiffs' motion. Dkt. 650. That same day, the court decided to allow briefing to go forward on MPS' Motion for Reconsideration. Dkt. 653. This brief is being filed pursuant to the court's briefing schedule set forth therein.

**SUMMARY OF ARGUMENT**

Plaintiffs should be able to cross-appeal this court's order granting class certification for three reasons.

1. The appeal which MPS filed was not based on an order which it had any right to appeal, as the

1

court's June 9[1], 2009 order was neither a final judgment nor an issuance of an injunction. Therefore, there was actually no need for plaintiffs to file their Motion for an Extension of Time to file their cross appeal in response to MPS' improperly filed appeal. The plaintiffs may proceed with filing their cross-appeal in a timely manner without permission of the court to do so.

2. Since the June 9, 2009 order was not an appealable order, the time for filing a notice of appeal arguably did not begin for either party until the court issued its August 19, 2009, orders which implemented the June 9, 2009, orders. Thus, plaintiffs may proceed to file their cross-appeal in a timely manner pursuant to Fed. R. Civ. App. 4(a)(2) and (3).

3. Should the court believe that its June 9, 2009 order is an appealable order, it should grant plaintiffs' motion for an extension of time to file their cross-appeal as the question of whether or not that order is indeed appealable is subject to serious question, is not resolved yet by the 7th Circuit, and therefore the plaintiffs' purported misreading of their deadline for filing their motion for an extension of time was caused by excusable neglect.

**ARGUMENT**

**I.    THE COURT OF APPEALS LACKS JURISDICTION OVER THIS APPEAL**

Although this court will not be the final arbiter of whether or not the court of appeals has jurisdiction over this appeal, and the 7th Circuit has decided to consider that issue through the merits briefs yet to be filed by the parties, this court needs to understand why the plaintiffs delayed their filing of their cross-appeal based on their good faith assertion, which is still pending before the 7th Circuit, that this court's June 9, 2009 order was simply not one in which MPS had the right to

---

[1] This court's Briefing Schedule on Motion for Reconsideration, perhaps due to a typo, refers to its Decision and Order Following Phase III as having issued on June 6, 2009. However, it was actually issued on June 9, 2009. (See Dkt. 598; Dkt. 653).

2

appeal.

### A. NO FINAL JUDGMENT UNDER 28 U.S.C. § 1291 EXISTS IN THIS CASE.

Defendant MPS' appeal is interlocutory and therefore should be dismissed for lack of final judgment. Generally, courts of appeal have jurisdiction of an appeal of a final judgment. 28 U.S.C. § 1291. Therefore, an appeal generally may not be taken until a final judgment disposing of all claims against the parties has been entered on the court's docket pursuant to Fed. R. Civ. P. 58. *See Alonzi v. Budget Construction Co.*, 55 F.3d 331, 333 (7th Cir. 1995); *Cleaver v. Elias*, 852 F.2d 266 (7th Cir. 1988). Once final judgment has been entered, a party may then appeal the final judgment and any interlocutory orders from the proceedings. *See Glass v. Dachel*, 2 F.3d 733, 738 (7th Cir. 1993). The purpose of this final judgment rule is obvious: to prevent the unnecessary delays and additional costs and confusion which is almost certain to result from multiple appeals.

In this case there can be no doubt that a final judgment has not yet been made. A judgment is final when it ends the litigation and leaves nothing for the court to do but execute the judgment. *See Catlin v. United States*, 324 U.S. 229, 233 (1945).

The June 9, 2009 decision is labeled clearly as "Decision and Order Following Phase III" and does not make reference to a final judgment. Dkt. 598. Indeed, a review of the Civil Docket for this case reveals that no final judgment has been rendered or entered. Further, there is nothing in the actual decision that would lead one to believe that it is substantively a final judgment. The conclusion of the June 9, 2009 decision references "the next step of this litigation," clearly showing that a final judgment could not possibly have been reached. Dkt. 598, p. 71. Further, the appendix timeline in the decision lays out a timeline which describes further action the parties and the Court will take with regard to this case. Indeed, the first step set forth by the court in the ongoing litigation

3

has only recently passed, and had not happened when MPS prematurely filed its appeal. Thus, pursuant to the district's court's order, both parties filed their respective proposed independent monitors and class notices on July 24, 2009. Dkt. 598. P. 72. This court ruled on said submissions on August 19, 2009. Dkt. 638 and 639. Once a final judgment has been made Defendants can fully protect their interest through an appeal from that final judgment.

### B. THE DISTRICT COURT'S ORDERS ON APPEAL ARE NOT INJUNCTIONS UNDER 28 U.S.C. § 1292(a)(1).

The five non-final orders regarding which MPS seeks review, do not qualify as injunctions necessary for 28 U.S.C. § 1292(a)(1) to apply and therefore the Court of Appeals does not have jurisdiction over the interlocutory orders. Defendants correctly recognize that the July 28, 2008, June 6, 2008, September 11, 2007, and November 14, 2003 orders are not injunctions by failing to even characterize them as such. However, Defendants incorrectly characterize the June 9, 2009 order as granting injunctive relief. Courts of appeals have jurisdiction over appeals of interlocutory orders which grant, continue, modify, or refuse injunctions. 28 U.S.C. § 1292(a)(1). The U.S. Supreme Court has held mandatory orders are considered injunctions under § 1292(a)(1) only when they effectively grant or withhold the relief sought on the merits and also affects a party's ability to obtain that relief which cannot be rectified by later appeal. *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 379 (1987); *Carson v. American Brands, Inc*, 450 U.S. 79, 84 (1981). The interlocutory order must also have a "serious, perhaps irreparable, consequence" if the interlocutory appeal is to be allowed. *Carson* at 84.

The June 9, 2009 order did not grant or withhold the relief sought on the merits. Rather, the June 9, 2009 order simply required the parties to submit proposals regarding the independent monitor

4

and procedures and content of individual and general notice to class members. Dkt. 598, p. 71. While the order did conclude that an evaluation process to determine whether compensatory services are appropriate is necessary, it did not yet order the process to take place. Dkt. 598, p. 70. Therefore, the relief sought on the merits was not granted by the June 9, 2009 order and the order cannot be considered an injunction under § 1292(a)(1) or the *Stringfellow* framework.

Even if this court believes that the evaluation process described in its June 9, 2009, decision ordered relief sought on the merits, an order to formulate plans is not appealable under 28 U.S.C. 1292(a)(1) as an injunction. *See Sherpell v. Humnoke Sch. Dist. No. 5 of Lonoke County*, 814 F.2d 538, 539 (8th Cir. 1987) (citing *Liddell v. Bd. of Educ. of City of St. Louis*, 693 F.2d 721, 723 (8th Cir. 1981)). If, as here, a court leaves important issues regarding the nature, requirements, or extent of the relief to be afforded by the ordered plan to the party, then jurisdiction over an appeal of such an order is lacking. *See Groseclose v. Dutton*, 788 F.2d 356, 360 (6th Cir. 1986). Further, a district court's order does not become reviewable merely because it provides procedural and substantive guidance which is meant to ensure that a lawful plan will be developed. *Sherpell* at 540.

In the case at bar, the district court indicated that it would appoint an independent monitor who would then have powers to create guidelines for MPS to implement. Said appointment did not occur until August 19, 2009. As the order is not sufficiently specific regarding the remedial plan, the June 9, 2009 is not be appealable under 28 U.S.C. § 1292(a)(1), and should be dismissed. This is especially true as the June 9, 2009 order contemplated further resolution of a possible dispute about who the monitor should be and the form of, and procedures for, distribution of class notice. That dispute was, in fact, effectuated, requiring further briefing at MPS' request.

The June 9, 2009 interlocutory order and previous orders also fail to create serious, perhaps

5

irreparable, consequences if this appeal is not allowed. As the § 1292(a)(1) exception was intended to be a very limited exception, an appeal will only be available in circumstances where an appeal will further the statutory purpose of permitting litigants to challenge interlocutory orders which have "serious, perhaps irreparable, consequences." *Carson v American Brands, Inc.*, 450 U.S. 79, 84 (1981) (citing *Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176, 181 (1955). MPS will not suffer "serious, perhaps, irreparable consequences" if its interlocutory appeal is dismissed.

Any harm MPS may suffer in complying with the District Court's orders until a final judgment is made will not be sufficiently serious or irreparable in order to allow this appeal to go forward. MPS' calculations are flawed as MPS fails to consider how many potential class members will actually seek compensatory services. While at first a potential 11,500 evaluations may seem staggering, this Court should realize that the vast majority of these individuals will not pursue compensatory services. This is for many reasons, including that class members may never learn of their opportunity to seek compensatory services and they may be so discouraged by MPS' previous failures toward them that they have no reasonable expectation MPS will do any better now if they were to come forward. Moreover, class membership is limited to students who attended MPS schools from September 2000-June 2005. Dkt. 598, p. 49.

In addition to a likely low response rate from actual class members[2], the evaluation framework will allow MPS to handle a large number of responses at a much lower cost than a traditional IEP evaluation. The first steps in the evaluation process, (1) determining if a responder is eligible for the class by determining if they attended school during the class period and then (2)

---

[2] See McGovern, *Second Generation Dispute System Design Issues in Managing Settlements,* 24 OHSJDR 53, 62 (2008),which explored response rates for consumer class action settlements, and demonstrated that response rates were between 1-11%, with a mean response rate of 3.4%.

6

requiring those that are determined to have attended a Milwaukee public school from September 2000-June 2005, to prove MPS had a reasonable basis to suspect the student was in need of special education during that time, will likely eliminate the vast majority of responders. Dkt. 598, pp 50-51. These steps, mainly relying on a review of records, will allow the majority of claims to be resolved quickly and at a much reduced cost compared to the traditional IEP process. MPS' estimates are simply misleading.

MPS may argue that, *Board of Education of Oak Park & River Forest High School District 200 v. Illinois State Board of Education* closely parallel to this case. However, this case is significantly different, both factually and legally. A major issue in *Board of Education of Oak Park* is the "stay-put" provision, something which is completely absent from the instant case. 79 F.3d 654 (7th Cir. 1996). In *Oak Park,* the child's parents sought two years of compensatory education and pursued that goal by filing a claim just before their child turned 21 years of age and getting the IDEA's stay-put provision to kick in. *Id.* at 660. Here, MPS has already been found liable for violations under the IDEA and therefore any of the over-compensation and IDEA abuse fears that were present in the *Board of Education of Oak Park* case are absent in the case at bar.

### 2. ORDER NEED NOT BE IMMEDIATELY APPEALED TO BE EFFECTIVELY CHALLENGED

All the orders can effectively be reviewed and reversed if needed by an appeal from a final judgment, or bona fide injunction which would cause serious, irreparable harm to MPS. Defendants will likely repeat their familiar mantra of the cost being too great. As this court has previously ruled, monetary expense alone does not justify an inappropriately filed appeal. *In the Matter of City of Springfield, Ill.*, 818 F. 2d 565, 567 (1987). Further, MPS' alleged financial woes are particularly

7

suspect considering MPS stands to receive an additional $31.2 million for special education under the recently passed American Recovery and Reinvestment Act. *See* Milwaukee Public Schools, *Adopted Budget for the American Recovery and Reinvestment Act* (June 4, 2009), http://mpsportal.milwaukee.k12.wi.us/ (search "Adopted ARRA Title I-IDEA Budgets").

### 3. PHASE III ORDER TO FORMULATE PLANS NOT APPEALABLE UNDER 28 U.S.C. 1292(a)(1)

An order to formulate plans is not appealable under 28 U.S.C. 1292(a)(1) as an injunction. *See Sherpell*, 814 F.2d at 539. While it is true that this Court provided guidance to the parties and addressed a few areas with some specificity, the order, taken as a whole, is far from precise and merely required the parties to propose independent monitors and forms of class notice for the court's further consideration. Dkt. 598, p. 71. A court's order does not become reviewable merely because it provides procedural and substantive guidance which is meant to ensure that a lawful plan will be developed. *Id*. at 540. If a court leaves important issues regarding the nature, requirements, or extent of the relief to be afforded by the ordered plan to the party, then jurisdiction over an appeal of such an order is lacking. *See Groseclose v. Dutton*, 788 F.2d 356, 360 (6th Cir. 1986). Important issues, including the actual content of the guidelines which will be implemented and who will be appointed as the independent monitor responsible for drafting these guidelines, remained undecided when the appeal was filed and therefore appeal at this time is inappropriate. [3]

*Groseclose* presents a very similar situation to the one before the court. While *Groseclose* did not involve an IDEA dispute, it did have incredibly similar procedural similarities, including

---

[3] Indeed, subsequent to MPS' filing of the Notice of Appeal in this matter, this Court appointed a monitor and established class notice procedures and claim forms, on August 19, 2009. Dkt. 638 and 639. None of these decisions are now before the Court of Appeals as they are not included in the Record on Appeal, due to the premature filing of the Notice of Appeal by MPS.

class action certification, bifurcated proceedings, a finding of liability, a court-ordered remedial plan, an independent monitor, and ultimately an interlocutory appeal. *Id.* The case thoroughly discusses interlocutory appeal of a remedial plan and looks at several other cases before finding that an order relating to a remedial plan is appealable only when the plan's content has been substantially prescribed by the court. *Id.* at 360. Here, as in *Groseclose*, this court did not substantially prescribed the content thereof, in its June 9, 2009 order, therefore the Phase III Order is not appealable under 28 U.S.C. 1292(a)(1).

All the orders can effectively be reviewed and reversed if needed by an appeal from a final judgment, or if MPS actually appeals an order in which the district court actually grants bona fide injunctive relief. Further, while MPS may suffer some expense complying with the district court's June 9, 2009 orders until a final judgment is made, this expense is not sufficiently serious or irreparable and entails merely preparatory actions before the court's final decision. Moreover, monetary expense alone does not justify an inappropriately filed appeal. *In the Matter of City of Springfield, Illinois*, 818 F. 2d 565, 567 (1987).

### C. COLLATERAL ORDER DOCTRINE DOES NOT APPLY

The collateral order doctrine does not apply to this case. The collateral order doctrine establishes a limited exception for appeal from an interlocutory order when that order determines an issue wholly separate from the merits and is effectively unreviewable on appeal from a final judgment. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). The conditions for collateral order appeal are stringent, requiring that an order: (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment. *See Firestone Tire & Rubber Co. v.*

9

*Risjord*, 449 U.S. 368, 375 (1981); *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978). Simply put, the collateral order doctrine is a very narrow exception. *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 430 (1985). These three conditions necessary for the collateral order doctrine to apply are not present in this appeal.

First, the June 9, 2009 order does not conclusively determine the disputed question. The order is far from definitive as important issues, such as who will serve as independent monitor, who will be appointed permanent members of the hybrid IEP team, what the form of the class notice will look like, and who will receive the individual class notice, remained until some of those issues were resolved by this court's August 19, 2009 orders. Further, while the court does provide some guidance to the independent monitor and hybrid IEP team in the June 9, 2009 decision, it leaves much up to the discretion of the independent monitor and hybrid IEP team. With much left to the discretion of the independent monitor and hybrid IEP team, this Court should find that the order has not conclusively determined the disputed question of what procedures should be used and what remedies may be available.

The requirement that the order resolve an important issue completely separate from the merits means that orders which involve considerations that are enmeshed in the factual and legal issues are not immediately reviewable. *Coopers & Lybrand* at 476. Defendants MPS are appealing not only the June 9, 2009 order (Dkt. 598), but the July 28, 2008 order (Dkt. 509), the June 6, 2008 order (Dkt. 471), the September 11, 2007 order (Dkt. 389) and the November 14, 2003 order (Dkt. 195) [4] as well, and therefore there is a substantial enmeshing of the factual and legal issues.

The final condition requiring that the orders be effectively unreviewable on appeal from a

---

[4] This Court should note that Plaintiffs filed an interlocutory appeal of the November 14, 2003, granting, in part, Plaintiffs' Motion for Class Certification, which the 7th Circuit declined to accept. (Dkt. 213).

10

final judgment is clearly not met. For the orders to be effectively unreviewable on appeal from final judgment the interests asserted would have to be lost. Thus, when a party's interests will not be "irretrievably lost in the absence of an immediate appeal" the collateral order exception is not applicable. *See Richardson-Merrell Inc.* at 431. While Defendants may prefer review prior to a final judgment, this does not make the orders effectively unreviewable on appeal of final judgment. Once a final judgment has been made, Defendants can easily appeal the June 9, 2009 order, the July 28, 2008 order, the June 6, 2008 order, the September 11, 2007 order, and the November 14, 2003 order, all of which can theoretically be reversed and protect Defendants' rights if the 7th Circuit were to rule in their favor on a properly filed appeal.

**II. SINCE THIS COURT'S JUNE 9, 2009 ORDER WAS NEITHER A FINAL JUDGMENT NOR AN INJUNCTION, THE OPERATIVE ORDERS WHICH WERE ARGUABLY APPEALABLE WERE THE COURT'S AUGUST 19, 2009 ORDERS WHICH EITHER PARTY MAY APPEAL WITHIN THE APPROPRIATE TIME FRAME.**

As stated above, this court's June 9, 2009, order, was neither a final judgment, nor an injunction which was properly appealable by MPS. There is no question that the court has yet to issue a final judgment in this case. Moreover, if there was an appealable injunction issued by the court, it was through its August 19, 2009 orders which set forth the specific powers and identity of the independent monitor, and instructed the parties how to proceed with issuing class notices and handling claimant's request for relief forms. Dkt. 638 and 639.

Essentially, then, MPS filed its appeal before an appealable order was issued, which means that the operating rule for appeal deadlines, including cross-appeals, is Fed. R. App. P. 4(a)(2). Under that rule, a notice of appeal that is filed before the entry of judgement, "is treated as filed on the date of and after the entry." In the case at bar, then, MPS' notice of appeal should be treated as

11

filed on August 19, 2009. "[A] premature appeal lingers until the final decision is entered." *Garwood Packaging, Inc. v. Allen & Company, Inc.*, 378 F. 3d 698, 701 (7th Cir. 2004) *citing, First Tier Mortgage Co. v. Investors Mortgage Ins. Co.*, 498 U.S. 269 (1991); *Otis v. City of Chicago*, 29 F. 3d 1159, 1166 (7th Cir. 1994) (en banc). Thus, if plaintiffs file a cross-appeal on or before September 18, 2009, they will have done so in a timely manner, pursuant to Fed. R. App. P. 4(a)(2) and (3).

> **III. IF THIS COURT BELIEVES ITS JUNE 9, 2009 ORDER IS AN APPEALABLE ORDER, THE FACT THAT THIS QUESTION IS STILL PENDING BEFORE THE 7TH CIRCUIT AND IS SUBJECT TO SERIOUS DEBATE PROVIDES PLAINTIFFS WITH EXCUSABLE NEGLECT FOR OBTAINING AN EXTENSION OF TIME TO FILE THEIR CROSS-APPEAL.**

Anticipating that MPS would insist that its appeal of this court's June 9, 2009 order was properly filed, in order to cover its bases plaintiffs filed a Motion for Extension of Time to File their Cross-Appeal. In their motion, the plaintiffs provided the following rationale for their good cause[5] for such an extension:

1. Plaintiffs previously sought to appeal the court's order granting class certification. On December 19, 2003, the 7th Circuit did not give permission for plaintiffs to proceed with that interlocutory appeal. Dkt. 213.

2. Plaintiffs previously filed a Motion to Dismiss Defendants' currently pending appeal. On August 26, 2009, the 7th Circuit neither granted nor denied said motion but ordered the parties to address jurisdictional issues in their briefs on the merits. Dkt. 641.

---

[5] Plaintiffs' motion used the term "good cause" for their extension. Upon further consideration and research of the issue, plaintiffs believe their motion may also be granted under the "excusable neglect" provision of Fed. R. App. P. 4(a)(5)(A)(ii).

12

3. As plaintiffs had a good faith belief that it would be premature to cross-appeal the interlocutory order granting class certification while their Motion to Dismiss defendants' appeal was pending, they justifiably did not file a cross appeal on that issue. Now, however, since the 7th Circuit intends to rule on its appellate jurisdiction within the merits of the appeal, plaintiffs should not be foreclosed from appealing an order which they have sought to appeal since 2003, but were previously foreclosed from doing so by the 7th Circuit at that time, due to its interlocutory nature.

4. As the 7th Circuit just issued a briefing schedule and will likely modify it upon receipt of a Notice of Cross-Appeal, the defendants will not be prejudiced by plaintiffs' filing a cross appeal at this time.

### A.  Excusable Neglect Must be Applied in a Flexible Manner.

Although it was not interpreting Fed. R. App. P. 4(a)(5), it is now accepted law that the Supreme Court's interpretation of the meaning of "excusable neglect" for a late filing in a bankruptcy matter has been adopted by the 7th Circuit (as well as other Circuits[6]) as the standard for reviewing extensions of time for filing late appeals. In *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 395 (1993), the Supreme Court established that the,

> guideposts for determining what sorts of neglect are considered "excusable,"...[are] equitable...taking into account all relevant circumstances surrounding the party's omission. These include...the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay...and whether the movant acted in good faith.

---

[6] See *Cannabis Action Network, Inc. v. City of Gainesville*, 231 F. 3d 761, 767-768 (11th Cir. 2000); *Cook v. Culbro Corporation*, 44 Fed. Appx. 762, 763-764, 2002 WL 1752245 (9th Cir. 2002); *Bennet v. City of Holyoke*, 362 F. 3d 1, 4-5 (1st Cir. 2004).

13

See *Marquez v. Mineta*, 424 F. 3d 539, 541 (7th Cir. 2005) citing and quoting *Pioneer*, *id.*

Contrary to MPS' assertions that create the impression that excusable neglect is rarely granted, the 7th Circuit has routinely upheld district court decisions granting extensions of time to appeal as long as those decisions did not abuse discretion and were sufficiently articulated for the 7th Circuit to review on appeal. *U.S. v. McKenzie,* 99 F. 3d 813, 815-16 (7th Cir. 1996). Indeed, if this court finds that plaintiffs' failure to file a timely cross appeal was due to a mistake in law, the 7th Circuit has found that mistakes in law can be excusable neglect. *Feeder Line Towing Service, Inc. v. Toledo, Peoria & Western R.R.*, 539 F. 2d 1107, 1109 (7th Cir. 1976).

Plaintiffs' decision as to when to appeal was not a tactical decision, as MPS suggests, but a good faith belief that MPS' appeal of the court's June 9, 2009, order of this court, was inappropriately filed, as explained above. *Feeder Line* clearly accepts a good faith interpretation of the law as within the meaning of excusable neglect. *Id.*, at 1109. See also, *Redfield v. Continental Casualty Corp.*, 818 F. 2d 596, 602 (7th Cir. 1987), which found that a plausible misconstruction of the appeal deadline is within the definition of excusable neglect.[7]

Indeed, as in the case at bar, "[I]f the mistake is slight, nonprejudicial, easily understandable, could happen to the best of us, etc., then dismissal of the appeal, with prejudice, may be an excessive sanction." *Lorenzen v. Employees Retirement Plan of the Sperry and Hutchinson Company, Inc.*, 896 F. 2d 228, 232 (7th Cir. 1990), *citations omitted.* Quite similar to this case, the error, if any, on plaintiffs' part, was caused, as in *Lorenzen*, by the conduct of MPS, which filed, as in that case, a

---

[7] Indeed, in the Rule 60(b) context, the 7th Circuit has also held that "excusable neglect" can include "omissions through carelessness and mistake." *Robb v. Norfolk & Western Railway Company*, 122 F. 3d 354, 358 (7th Cir. 1997). In fact, the *Robb* decision goes on to state that the district court may consider the movant's counsel's "overall record of compliance with court deadlines" as a factor in granting a motion to extend time for excusable neglect. *Id.*, at 362. This court should take notice that plaintiffs' counsel has never missed a deadline in the nearly 8 years of litigating this case with hundreds of pleadings filed and deadlines met.

14

confusing "mishmash" of an appeal. *Id.*, at 234.

Perhaps the most analogous case to the instant situation is, *Alpine State Bank v. Ohio Casualty Insurance Company*, 941 F. 2d 554 (7th Cir. 1991). In that case, the 7th Circuit upheld a district court's order extending the time to file an appeal when one party "misperceived the finality of the district's court's order." *Id.,* at 556, fn. 2. Whether or not plaintiffs, in the instant case have misperceived the finality of the court's June 9, 2009 order is pending before the 7th Circuit, but *Alpine State Bank* clearly stands for the proposition that if plaintiffs did misperceive it, the excusable neglect standard should apply and permission to extend the time for appeal should be granted.

## CONCLUSION

Wherefore, in the interests of justice and for the reasons set forth above, plaintiffs hereby request that the court reject MPS' Motion for Reconsideration of the court's previously issued order extending the time for plaintiffs to file a cross appeal of the court order on class certification, dated November 14, 2003. Dkt. 195. In the alternative, the court can simply allow plaintiffs to file a timely cross-appeal with the understanding that the operative date for MPS premature notice of appeal is August 19, 2009, the date on which the court arguably issued an injunction against MPS.

Dated this     2nd      day of September, 2009.

                                                                  s/Jeffrey Spitzer-Resnick
                                                                  Jeffrey Spitzer-Resnick
                                                                  Attorney for Plaintiffs
                                                                  Disability Rights Wisconsin
                                                                  131 W. Wilson St., Suite 700
                                                                  Madison, WI 53703
                                                                  (608) 267-0214

b-response mps motion reconsider cross appeal extension