**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**JAMIE S, et al.,**

          Plaintiffs,

    -vs-                     **Case No. 01-C-928**

**MILWAUKEE BOARD OF SCHOOL DIRECTORS,**
**MILWAUKEE PUBLIC SCHOOLS, et al., and**
**WISCONSIN DEPARTMENT OF PUBLIC INSTRUCTION, et al.,**

          Defendants.

---

## DECISION AND ORDER

  This is a decade-old lawsuit under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, a federal statute which requires states to provide a "free appropriate public education" to disabled children in exchange for federal funding. In the initial district court proceedings, Magistrate Judge Aaron Goodstein granted the plaintiffs' motion for class certification and appointed Disability Rights Wisconsin ("DRW") as class counsel. ECF No. 195. The district court eventually held a bench trial and found the defendants, Milwaukee Public Schools ("MPS") and the Wisconsin Department of Public Instruction ("DPI"), liable for systemic violations of the IDEA. ECF No. 389; *Jamie S. v. Milwaukee Pub. Sch.*, 519 F. Supp. 2d 870 (E.D. Wis. 2007). DPI settled with the class, agreeing to order MPS to meet certain compliance benchmarks. The district court approved the settlement over MPS's objection. ECF No. 471; 2008 WL 2340362 (E.D. Wis. June 6,

2008). The court then ordered MPS to comply with a complex remedial scheme. ECF No. 598; 2009 WL 1615520 (E.D. Wis. June 9, 2009).

MPS appealed, and the Seventh Circuit vacated all of these orders. "What remains are the claims of the individual plaintiffs; the district court did not find a denial of a free appropriate public education [FAPE] in any individual case. Furthermore, the court's reasons for excusing administrative exhaustion appear to have been tied to the class allegations, and it's not clear whether the court would have excused exhaustion for any of the individual claims. Finally, it's possible – perhaps likely – that some of the named plaintiffs' individual circumstances have changed such that their claims are now moot. We leave it to the district court on remand the task of determining whether anything remains of this case and what, if anything, should happen next." *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 499-500 (7th Cir. 2012).

On remand, MPS and DPI jointly move for judgment on the pleadings, arguing that the plaintiffs did not exhaust their administrative remedies. Also before the Court are separate motions filed by MPS and DPI for restitution of attorneys fees.

**I.      Judgment on the Pleadings**

As an initial matter, the Court must discuss the plaintiffs' argument that the Seventh Circuit's ruling does not preclude further litigation over the certification of a class. This argument flies in the face of the mandate rule, which requires a lower court to adhere to the commands of a higher court on remand. *United States v. Polland*, 56 F.3d 776, 777 (7th Cir. 1995). Here, the Seventh Circuit specifically stated that individual claims are all that

"remains" of this case. Moreover, the law of the case doctrine, a corollary to the mandate rule, prohibits a lower court from reconsidering on remand an issue expressly or impliedly decided by a higher court absent certain circumstances. *Id.* at 779. "Once an appellate court either expressly or by necessary implication decides an issue, the decision will be binding upon all subsequent proceedings in the same case." *Roboserve, Inc. v. Kato Kagaku Co.*, 121 F.3d 1027, 1031 (7th Cir. 1997). The bulk of the Seventh Circuit's opinion was devoted to its discussion of why the class certified by the district court failed to meet the various requirements of Fed. R. Civ. P. 23. That the issue was conclusively decided is highlighted by Judge Rovner's separate opinion, where she wrote: "I do not rule out the *possibility* that a class properly could be certified in this case or one like it, and it is to this limited extent that I dissent." *Jamie S.* at 504 (Rovner, J., concurring in part and dissenting in part) (emphasis added). Thus, according to the controlling majority opinion, the plaintiffs can no longer pursue class certification.

As explained by the Seventh Circuit, the duty to provide disabled students with a "free appropriate public education" is a "complex and inherently child-specific undertaking." *Jamie S.* at 486. The IDEA imposes "child find" obligations, wherein all "children with disabilities residing in the State . . . and who are in need of special education and related services, are identified, located, and evaluated and a practical method is developed and implemented to determine which children with disabilities are currently receiving needed education and related services." 20 U.S.C. § 1412(a)(3)(A). Each child's individual needs must be evaluated for the purpose of developing an "individualized educational program,"

-3-

or "IEP," outlining the "particular special-education services that are necessary to allow the child to learn in the 'least restrictive environment.'" *Jamie S.* at 486 (citing §§ 1412(a)(4)-(5), 1414).

With respect to exhaustion, the IDEA requires states to provide a formal process for parents to seek administrative and judicial review of "any matter relating to the identification, evaluation, or educational placement of a child, or the provision of a free appropriate public education to such child" in a funded special-education program. § 1415(b)(6)(A). Any party aggrieved by the findings and decision made after an impartial due process hearing may bring a civil action in federal court. § 1415(i)(2)(A).[1] "It is well-settled that the IDEA requires an aggrieved party to exhaust all administrative remedies before bringing a civil action in federal or state court . . ." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 112 (2d Cir. 2004). Exhaustion advances several objectives, including: (1) permitting the exercise of agency discretion and expertise on issues requiring these characteristics; (2) allowing the full development of technical issues and a factual record prior to court review; (3) preventing deliberate disregard and circumvention of agency procedures established by Congress; and (4) avoiding unnecessary judicial decisions by giving the agency the first opportunity to correct any error. *McQueen v. Colo. Springs Sch. Dist. No. 11*, 488 F.3d 868, 873 (10th Cir. 2007). "States are given the power to place themselves in compliance with

---

[1] Plaintiffs argue that their use of DPI's Complaint Resolution Procedure is sufficient for purposes of the IDEA's exhaustion requirement. Formerly known as EDGAR complaints, the CRP process is an "informal" process and an "optional step toward binding relief." *Vultaggio ex rel. Vultaggio v. Bd. of Educ.*, 343 F.3d 598, 601 (2d Cir. 2003). It is not an "adequate substitute to exhausting administrative remedies under the IDEA." *Ass'n for Cmty. Living in Colo. v. Romer*, 992 F.2d 1040, 1045 (10th Cir. 1993).

-4-

the law, and the incentive to develop a regular system for fairly resolving conflicts under the [IDEA]. Federal courts – generalists with no experience in the educational needs of handicapped students – are given the benefit of expert factfinding by a state agency devoted to this very purpose." *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1303 (9th Cir. 1992).

Plaintiffs may bypass the administrative process in a variety of contexts, including when exhaustion would be futile or inadequate, or when the administrative agency cannot grant relief. *Beth V. v. Carroll*, 87 F.3d 80, 88 (3d Cir. 1996). Plaintiffs argue, as they did in the prior district court proceedings, that exhaustion should be excused because their claims are "systemic" in nature. "[S]everal courts have recognized that IDEA claims raising 'systemic' or 'structural' allegations may not need to be administratively exhausted." *Doe v. Ariz. Dep't of Educ.*, 111 F.3d 678, 681 (9th Cir. 1997) (collecting cases). The exception for "systemic" violations "merely flows implicitly from, or is in fact subsumed by, the futility and no-administrative-relief exceptions . . ." *Beth V.* at 89. For example, in *Heldman v. Sobol*, 962 F.2d 148 (2d Cir. 1992), the plaintiff challenged a state procedure which permitted boards of education to appoint hearing officers, resulting in the selection of adjudicators that were biased in favor of the school district, which in turn violated his right to an impartial due process hearing. The court characterized this claim as "systemic" and excused exhaustion. "Heldman claims that the NYSED regulation specifying the hearing officer selection procedure violates the mandate of the IDEA. Because the regulation implements a New York statute, neither the Commissioner nor the assigned hearing officer
-5-

has the authority to alter the procedure; therefore, it would be an exercise in futility to require Heldman to exhaust the state administrative remedies." *Id.* at 159. As the Second Circuit later explained, the "common element" among *Heldman* and other cases applying the "systemic violation" exception is that the "plaintiffs' problems could not have been remedied by administrative bodies because the framework and procedures for assessing and placing students in appropriate educational programs were at issue, or because the nature and volume of complaints were incapable of correction by the administrative hearing process." *J.S. ex rel. N.S.* at 114 (discussing *Heldman*; *Mrs. W. v. Tirozzi*, 832 F.2d 748 (2d Cir. 1987) ; *J.G. v. Bd. of Educ. of the Rochester Sch. Dist.*, 830 F.2d 444 (2d Cir. 1987); *Jose P. v. Ambach*, 669 F.2d 865 (2d Cir. 1982)). In other words, "it would be futile to complete the administrative process because the hearing officer had no power to correct the violation." *J.S. ex rel. N.S.* at 113.

The plaintiffs claim that the defendants failed to identify them as eligible for special education at an earlier time. The failure to properly identify a disabled student can itself be a violation of the IDEA, but only if the "failure results in the denial of a free appropriate public education to a qualifying child with a disability." *Jamie S.* at 495. Accordingly, this is an issue that must be litigated through the administrative process. "A dispute over such eligibility policies concerns, in essence, questions about the identification and evaluation of individual disabled children, precisely the kind of dispute to which the IDEA's administrative scheme is addressed." *Hoeft* at 1306. Wisconsin's procedures are capable of resolving child find disputes on a case-by-case, individual basis. Wis. Stat. § 115.80(1)(a)1

(a parent or attorney representing the child may "file a written request for a hearing within one year after the refusal or proposal of the local educational authority to initiate or change his or her child's evaluation, individualized education program, educational placement, or the provision of a free appropriate public education"); § 115.80(5)(a) (hearing officers have the authority to "issue an order consistent with this subchapter and 20 U.S.C. § 1415(k) and to order whatever remedy is reasonably necessary to bring the parties into compliance with this subchapter"); *Hoffman v. East Troy Cmty. Sch. Dist.*, 38 F. Supp. 2d 750 (E.D. Wis. 1999) (describing Wisconsin's child-find procedures).

Moreover, when the Seventh Circuit ruled that the class certification order must be vacated for lack of commonality, it held that "[c]hild-find inquiries, like other aspects of the IDEA, are necessarily child specific. There is no such thing as a 'systemic' failure to find and refer individual disabled children for IEP evaluation – except perhaps if there was 'significant proof' that MPS operated under child-find *policies* that violated the IDEA. . . . [P]roof of an illegal policy 'is entirely absent here.'" *Jamie S.* at 498 (citing *Wal-Mart Stores, Inc. v. Dukes*, — U.S. —, 131 S. Ct. 2541, 2550 (2011)) (emphasis in original). Accordingly, it is the law of the case that the defendants did not systematically fail to find and refer disabled children for evaluation pursuant to an illegal policy of "general applicability." *Mrs. W* at 756; *Heldman* at 158 n.11. Therefore, the defendants cannot find safe harbor in the exception for systemic violations. Each plaintiff must offer an individual excuse for failing to exhaust the administrative process. *See, e.g., Urban by Urban v. Jefferson Cnty. Sch. Dist. R-1*, 89 F.3d 720, 725 (10th Cir. 1996) (exhaustion required for

-7-

claim regarding creation of IEP because the district did not adopt a "policy of general applicability contrary to law which 'thereby renders agency expertise and the factual development of an administrative record less important'") (quoting *Ass'n for Cmty. Living in Colo. v. Romer*, 992 F.2d 1040, 1044 (10th Cir. 1993)).

The Seventh Circuit remanded this case to address the *individual* claims of the named plaintiffs in this case, not to engage in further litigation over class certification. None of the plaintiffs exhausted their administrative remedies, and the exception for systemic violations is essentially a "class action exception." *J.S. ex rel. N.S.* at 113. While there are some cases, such as *Heldman*, that apply this exception to individual claims, those cases are distinguishable because the administrative process can resolve individual child find disputes. Therefore, the defendants are entitled to judgment on the pleadings.[2]

## II.  Attorneys' Fees – MPS

The district court ordered MPS to pay DRW $459,123.96 in interim attorneys' fees based upon the plaintiffs' status as "prevailing parties" under the IDEA. 20 U.S.C. §

---

[2] Aside from the primary issue of child find, the plaintiffs also argued that the defendants failed to review relevant data, granted improper extensions to mandated deadlines, used suspensions in the pre-referral process (which impedes the child's initial evaluation), and conducted meetings outside the presence of parents. *Jamie S. v. Milwaukee Pub. Sch.*, 519 F. Supp. 2d 870, 881 (E.D. Wis. 2007). The plaintiffs do not appear to advance these theories after remand. To the extent these claims are still viable, the defendants are entitled to judgment on them because they are claims that should have been raised in the administrative process, just like the child find claims. *See, e.g., Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1307 (9th Cir. 1992) ("even where local school policies appear on their face to violate the IDEA, administrative exhaustion may be necessary to give the state a reasonable opportunity to investigate and correct such policies. . . . Although hearing officers lack power to adjudicate questions of statutory compliance, they are empowered to order the provision of an appropriate education program for an individual child, as guaranteed by the IDEA") (internal citations omitted); *McQueen v. Colo. Springs Sch. Dist. No. 11*, 488 F.3d 868, 875-76 (10th Cir. 2007) ("To be sure, Joshua contends that the CDE's guidelines and the District's policy facially violate the IDEA. . . . But the ultimate issue in the case – and the decisive consideration for the reimbursement claim in district court – is whether Joshua received an appropriately individualized IEP and whether he was denied a FAPE"); *Romer* at 1045 ("facial violation" of the IDEA "still ultimately requires a determination as to whether any individual child was denied a [FAPE]. Such a determination is enhanced by the factual details of a particular child's case").

1415(i)(3)(B)(I). As the court explained, the "question of liability was determined by the court in its September 11, 2007 Decision and Order. The plaintiffs have prevailed." ECF No. 511; 2008 WL 3852663, at *1 (E.D. Wis. Aug. 15, 2008). The liability order referenced in this decision was ultimately vacated by the Seventh Circuit. Therefore, the plaintiffs are no longer prevailing parties under the IDEA, and the order granting interim attorneys' fees must be vacated. "The plaintiffs, we now know, have lost this case; and when a judgment on which an award of attorney's fees to the prevailing party is based is reversed, the award, of course, falls with it." *Palmer v. City of Chi.*, 806 F.2d 1316, 1320 (7th Cir. 1986); *Fed'n of Adver. Indus. Representatives, Inc. v. City of Chi.*, 326 F. 3d 924, 933 (7th Cir. 2003) ("Obtaining a favorable judgment that is reversed on appeal does not entitle a party to prevailing-party status"). Plaintiffs argue that MPS cannot recover their fees because they did not appeal the interim fee order. Even if MPS did not explicitly attack the fee award on appeal, MPS's successful appeal eviscerated the entire basis for the fee award. Pursuant to the law of the case, the plaintiffs are no longer prevailing parties, so the fee award is subject to vacatur.[3]

### III.     Attorneys' Fees – DPI

As noted above, the plaintiffs settled their claims against DPI. In exchange, DPI agreed to pay DRW $475,000.00 in attorneys' fees and costs. ECF No. 433-2 at 18. DPI did

---

[3] Strangely, the plaintiffs also chastise MPS for not obtaining a bond pending appeal. "The function of a supersedeas bond is to protect the judgment creditor's position from erosion during any period that its right to execute is obstructed by a stay pending appeal . . ." *Olympia Equip. Leasing Co. v. Western Union Tel. Co.*, 786 F.2d 794, 800 (7th Cir. 1986). In this context, the plaintiffs and DRW are judgment creditors, and their position was protected during the appeal because MPS tendered payment of the fees to DRW. Now DRW has to pay them back. *Balark v. City of Chi.*, 81 F.3d 658, 663 (7th Cir. 1996) ("If a district court judgment is reversed on appeal, the effect of the appellate court ruling is that the judgment was never correct to begin with. If a judgment has been paid immediately, it must be refunded").

not join in MPS's appeal (in fact, they filed an *amicus* brief in support of the settlement), but the Seventh Circuit vacated the district court's order approving the settlement because DPI "cannot unilaterally force MPS to take specific remedial action," and also because there can be "no class settlement if the class should not have been certified in the first place." *Jamie S.* at 502. DPI argues that it is entitled to restitution because the fees were paid in reliance on the district court's now-vacated order approving the settlement agreement. Put another way, DPI argues that the settlement agreement – specifically the agreement to pay the fees – should be rescinded under a variety of theories, including mutual mistake and frustration of purpose. This is a state law claim that should be initiated by a pleading, not raised for the first time in a collateral motion. *Carr v. Runyan*, 89 F.3d 327, 331 (7th Cir. 1996) ("the formation, construction, and enforceability of a settlement agreement is governed by local contract law"). The Court would not exercise supplemental jurisdiction over such a claim in any event because the federal claims have now been dismissed. 28 U.S.C. § 1367(c)(3); *Bourke v. Conger*, 639 F.3d 344, 346 (7th Cir. 2011) ("district courts should generally dismiss . . . state law claims without prejudice once they have resolved all federal claims").

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Defendants' motion for judgment on the pleadings [ECF No. 680] is **GRANTED**;

2. MPS's motion to vacate the order granting interim attorneys' fees and for restitution of attorneys' fees [ECF No. 682] is **GRANTED**;

3. DPI's motion for restitution of attorneys' fees [ECF No. 677] is **DENIED** without prejudice;

4. Plaintiffs' motion to strike DPI's reply brief [ECF No. 701] is **DENIED**; and

5. This matter is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 20th day of August, 2012.

**BY THE COURT**:

_____
**HON. RUDOLPH T. RANDA
U.S. District Judge**